A09A1247. WILLIAMS v. THE STATE.
(686 SE2d 446)

DOYLE, Judge.

After a jury trial, Scotty P. Williams was convicted of armed robbery,[1] two counts of aggravated assault,[2] burglary,[3] criminal attempt to commit aggravated sodomy,[4] and possession of a knife during the commission of a crime.[5] On appeal, Williams (1) challenges the sufficiency of the evidence as to each count; (2) argues that his trial counsel was ineffective; and contends that the trial court erred (3) by giving the level of certainty portion of the charge on the reliability of eyewitness identification, and (4) by failing to issue the mere presence charge as part of its charge to the jury. For the reasons that follow, we affirm.

1. Williams argues that the evidence was insufficient to support the convictions.

> Under *Jackson v. Virginia*, . . .[6] the sufficiency of the evidence is measured by determining whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. It is solely

---

[1] OCGA § 16-8-41 (a).

[2] OCGA § 16-5-21 (a) (1), (a) (2), (d).

[3] OCGA § 16-7-1 (a).

[4] OCGA §§ 16-4-1; 16-6-2 (a).

[5] OCGA § 16-11-106 (b) (1).

[6] 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979).

within the purview of the jury to weigh conflicting evidence and judge the credibility of the witnesses.[7]

So viewed, the evidence presented at trial establishes that in the early morning hours of November 2, 1996, a man entered the home of 76-year-old Katherine Drake, who was asleep in bed at the time. Drake awoke to see the man standing over her, holding a knife, which she described as a steak knife with a dark handle and a blade approximately five inches in length. The man demanded that Drake give him money, and he followed her to the dining room, where she gave him $40. The man then ordered Drake back to the bedroom and demanded that she engage in sex with him. The man first told Drake to perform oral sex on him, to which she responded that she "would throw up if [she] had to do that." The man forced Drake to fondle him while they were in the bedroom. Next, the man forced Drake into the living room and attempted to engage in intercourse with her, but could not complete the act and, instead, rubbed his erect penis between Drake's legs. The man then left Drake's home at approximately 3:00 a.m., and she called her daughter and then called the police.

Based on her description of the perpetrator, a photographic lineup was prepared, and she identified Williams's photograph. Drake also identified Williams as her assailant at trial. Williams was convicted, and following the trial court's grant of his motion to file an out-of-time motion for new trial, he appeals.

(a) First, Williams contends that this Court should not consider the testimony of Drake, which Williams argues contained "many flaws"; and argues that without her testimony, the only remaining evidence presented to support each count was circumstantial — that he was merely present near the scene. Regardless of any inconsistencies in Drake's testimony, it is for the jury to assess witness credibility, and the jury in this case chose to believe Drake's identification of Williams as the individual who committed the crimes.[8] Moreover, Drake's testimony alone was sufficient to support Williams's convictions.[9] Accordingly, sufficient evidence was presented to the jury to support the guilty verdict.[10]

---

[7] (Punctuation omitted.) *Cantrell v. State*, 231 Ga. App. 629 (500 SE2d 386) (1998).

[8] See id.

[9] See *Burden v. State*, 290 Ga. App. 734, 735 (1) (a) (660 SE2d 481) (2008). See also OCGA § 24-4-8 ("The testimony of a single witness is generally sufficient to establish a fact.").

[10] See *Burden*, 290 Ga. App. at 735 (1) (a) (armed robbery); *Waters v. State*, 294 Ga. App. 442, 443-444 (1) (669 SE2d 450) (2008) (burglary); *Martin v. State*, 281 Ga. App. 64, 66 (2) (635 SE2d 358) (2006) (aggravated assault); *Tenant v. State*, 218 Ga. App. 620, 620-621 (1) (462 SE2d 783) (1995) (attempt to commit aggravated sodomy); *Mobley v. State*, 211 Ga. App. 709, 709-710 (1) (441 SE2d 73) (1994) (possession of a knife during the commission of a crime).

(b) Next, Williams maintains that there was insufficient evidence to support his conviction for criminal attempt to commit aggravated sodomy because there was no evidence that he took a substantial step toward completing the crime.

> A person can be guilty of criminal attempt to commit aggravated sodomy when, with intent to commit aggravated sodomy, he performs any act which constitutes a substantial step toward the commission of that crime. That crime here is defined as forcibly performing or submitting to any sexual act involving the sex organs of one person and the mouth or anus of another against the will of the other person.[11]

The State presented sufficient evidence via Drake's testimony that Williams attempted to force her to perform oral sodomy on him. Drake testified that Williams moved her to the bedroom of her home, while holding the knife, and told her to perform oral sex on him. When she explained that she could not engage in the act, Williams, while still standing over her, moistened and fondled himself and then forced her to fondle him. Despite Williams's arguments to the contrary, the fact that these acts could also be a precursor to vaginal intercourse does not mean that there was insufficient evidence for the jury to find that these actions constituted a substantial step toward committing aggravated sodomy. Accordingly, there was sufficient evidence presented for the jury to find Williams guilty of this count.[12]

2. Williams contends that his trial counsel was ineffective. We disagree.

> To prevail on a claim for ineffective assistance of counsel, a criminal defendant must establish both that his counsel's performance was deficient, and also that the deficient performance prejudiced his defense. There is a strong presumption that trial counsel's performance falls within the wide range of reasonable professional assistance and that any challenged action might be considered sound trial strategy. Trial counsel's strategic and tactical decisions made throughout the course of the case offer no grounds for reversal on the basis of ineffective assistance.[13]

---

[11] (Citations and punctuation omitted.) *Mann v. State*, 263 Ga. App. 131 (1) (587 SE2d 288) (2003). See also OCGA §§ 16-4-1; 16-6-2 (a).

[12] See, e.g., *Tenant*, 218 Ga. App. at 620-621 (1).

[13] (Citations and punctuation omitted.) *Hubert v. State*, 297 Ga. App. 71, 76 (7) (676 SE2d

Williams enumerates several instances of ineffective assistance of counsel, each of which is addressed below.

(a) Williams first argues that his trial counsel was ineffective for failing to investigate Drake's photographic identification or object to its admission into evidence. Williams contends that because Drake was far-sighted and did not have her glasses on, avoided looking at her attacker, and was under a great deal of stress, counsel should have investigated the construction of the photographic lineup and objected to its admission at trial. We find his argument unpersuasive.

Williams's trial counsel thoroughly cross-examined Drake in an effort to discount her ability to correctly identify her attacker both in court and in the photographic lineup by questioning the lighting during the attack, her ability to see clearly, and her intentional avoidance of looking at her attacker's face.[14] Williams fails to explain how investigation of the photographic lineup would have changed the outcome of the case or whether the trial court was likely to have excluded the lineup had counsel objected to its admission. Specifically, Williams fails to explain how the lineup was impermissibly suggestive or that the suggestiveness gave rise to a substantial likelihood of misidentification.[15] Accordingly, Williams has not met his burden of establishing ineffective assistance of counsel as to this enumeration.

(b) Williams contends that trial counsel was ineffective for failing to review or produce a possibly exculpatory videotape from a neighboring convenience store, which Williams visited the night of the attack. Williams maintains that if counsel had reviewed the video or had shown the video during trial, a discrepancy could have been shown between what Williams wore according to Drake's testimony and what Williams wore in the video.

Again, we find Williams's argument unpersuasive. Trial counsel cross-examined the officer who witnessed the videotape about the contents of the tape, and he attacked Drake's description of the perpetrator's clothing by comparing it to that worn by Williams as testified to by other witnesses who saw Williams that night. Because trial counsel thoroughly attacked Drake's identification of her attacker based on her description of the clothing he allegedly wore that night, Williams has failed to establish how counsel's failure to view the video before trial or present the video as evidence during trial prejudiced his defense.

---

436) (2009). See also *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[14] See, e.g., *Gibson v. State*, 291 Ga. App. 183, 186-187 (2) (661 SE2d 850) (2008) (" 'It is clear that trial counsel made a strategic choice not to attempt to suppress the identification evidence, but instead to attack the identification testimony on cross-examination.' ").

[15] See, e.g., *Clowers v. State*, 299 Ga. App. 576, 577-578 (2) (a) (683 SE2d 46) (2009).

(c) Williams maintains that trial counsel was ineffective for failing to request a mere presence jury charge. We disagree.

As an initial matter, trial counsel testified that although Williams admitted that he was near Drake's home on the evening of her attack, he never admitted that he entered her home that night, and counsel did not want to insinuate that he was any closer to the house than when he was at the convenience store. "Decisions about which jury charges to request are strategic and provide no grounds for reversal unless . . . so patently unreasonable that no competent attorney would have chosen them."[16] We cannot agree that trial counsel's failure to request a mere presence jury charge was patently unreasonable. In any event,

> the rule that mere presence at the scene of a crime is insufficient to convict is actually a corollary to the requirement that the State prove each element of the offense charged. Here, . . . the trial court correctly instructed the jury on the duty of the State to prove each element of the crime beyond a reasonable doubt. . . .[17]

Thus, Williams also is unable to show how any deficiency prejudiced his defense.

(d) Williams argues that trial counsel was ineffective for failing to poll the jury after deliberations. "[Williams] has not cited — and we have not found — any authority requiring trial counsel to poll the jury to provide effective representation. On the contrary, we have consistently rejected ineffective assistance claims based on the failure to conduct a poll."[18]

(e) Williams argues that trial counsel was ineffective for failing to file a timely motion for new trial or an immediate appeal, but he has waived these arguments because he failed to raise them before the trial court.[19]

3. Finally, Williams contends that the trial court erred for the

---

[16] (Punctuation and footnote omitted.) *Wilburn v. State*, 278 Ga. App. 76, 78 (2) (b) (628 SE2d 174) (2006).

[17] (Citation and punctuation omitted.) *Torres v. State*, 298 Ga. App. 158, 159 (1) (679 SE2d 757) (2009).

[18] (Punctuation omitted.) *Ellison v. State*, 296 Ga. App. 752, 756-757 (2) (e) (675 SE2d 613) (2009).

[19] See *Wilson v. State*, 277 Ga. 195, 200 (2) (586 SE2d 669) (2003) ("Where the issue of trial counsel's effectiveness has been raised on motion for new trial, any claims not raised at that time are waived."). We note that Williams argues that his counsel's failure to file a timely motion for new trial prevented him from having his sentence reviewed by a Sentence Review Panel; however, the record reflects that a Sentence Review Panel did review his sentence and affirmed it in an order entered on December 15, 2000.

following reasons:

(a) He contends that the trial court erred by giving the level of certainty portion of the charge on identity because the only direct evidence in the case was provided by Drake's testimony and that portion of the charge has since been disapproved of by the Supreme Court of Georgia.

> In light of the scientifically-documented lack of correlation between a witness's certainty in his or her identification of someone as the perpetrator of a crime and the accuracy of that identification, [in *Brodes v. State*[20]] the Supreme Court of Georgia has advised trial courts to refrain from informing jurors they may consider a witness's level of certainty . . . in deciding the reliability of that identification. While giving that portion of the charge is error, the question in this case is whether it was harmful error.
>
> The instruction was harmful in *Brodes* because the witnesses could not identify Brodes in a photographic array, had given the police no physical description of the perpetrator, and were under stress while being robbed at gunpoint in the night time. The identification evidence was the only evidence against Brodes, and the prosecuting attorney repeatedly solicited and emphasized the witnesses' later absolute certainty that Brodes was the robber.[21]

As an initial matter, it appears that Williams induced error in the case by requesting the identity charge be given by the trial court, and he cannot, therefore, attack his convictions based on this error.[22] In any event, we determine that the erroneous charge was harmless in this case because it is highly probable that it did not contribute to the verdict. First, Williams's trial counsel thoroughly cross-examined Drake regarding her ability to have accurately identified Williams based on her interaction with her attacker that night.[23] Williams interacted with Drake at close range, even though it was not during daylight hours. Despite the use of a weapon, Drake described him to police and identified Williams in a photographic lineup shortly after

---

[20] 279 Ga. 435 (614 SE2d 766) (2005).

[21] (Citations and punctuation omitted.) *Page v. State*, 287 Ga. App. 182, 183-184 (2) (651 SE2d 131) (2007).

[22] See *Inman v. State*, 281 Ga. 67, 69 (2) (635 SE2d 125) (2006); *Fielding v. State*, 299 Ga. App. 341, 343 (2) (682 SE2d 675) (2009); *Chatman v. State*, 283 Ga. App. 673, 675 (2) (642 SE2d 361) (2007).

[23] Cf. *Rabie v. State*, 294 Ga. App. 187, 194-195 (5) (b) (668 SE2d 833) (2008) (holding that error of giving charge was harmless in part because, "while [the victim] expressed certainty [of attacker's identity] on direct examination, she acknowledged on cross-examination that she could have been mistaken").

the attack, in addition to identifying him in court.[24] "Furthermore, the trial court instructed the jury about the State's burden of proving [Williams's] identity as the perpetrator beyond a reasonable doubt as well as other relevant considerations. . . ."[25] Finally, she described his accent, which was supported by testimony of other individuals, and numerous individuals testified that Williams was in the immediate area of Drake's home around the time of the attack.

(b) Williams also contends that the trial court erred by failing to issue the mere presence charge. For the reasons discussed in Division 2 (c), we find this argument unpersuasive.

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED NOVEMBER 9, 2009.

*Green B. Moore III*, for appellant.
*Fredric D. Bright, District Attorney, Shelley S. Tice, Assistant District Attorney*, for appellee.

---

[24] Compare with *Robinson v. State*, 297 Ga. App. 43, 46-47 (2) (676 SE2d 770) (2009) (reversing a conviction based on *Brodes* because the witnesses were unable to give a description of attacker or identify attacker in photographic lineup prior to trial).

[25] *Hamilton v. State*, 291 Ga. App. 655, 656-657 (2) (662 SE2d 759) (2008).